**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| ALAMEDA RESEARCH LTD., | |
| Plaintiff, | |
| - against - | |
| DUNAMU INC., | Adv. Pro. No. 24-_____(JTD) |
| Defendant. | |

**COMPLAINT FOR TURNOVER OF ASSETS PURSUANT TO 11 U.S.C. § 542 AND**
**FOR VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362**

Plaintiff Alameda Research Ltd. ("Alameda" or "Plaintiff"), through its

undersigned counsel, for its complaint against Defendant Dunamu Inc. ("Dunamu" or "Upbit")

alleges the following based upon personal knowledge and upon its investigation to date as to

itself and its own acts, and upon information and belief as to all other matters:

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

## NATURE OF THE CASE

1.      Plaintiff brings this adversary proceeding ("Adversary Proceeding") pursuant to Sections 105 and 542 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") to recover more than $53 million in debtor assets held in an Upbit exchange account belonging to Alameda.  Plaintiff also asserts a claim for violations of the automatic stay pursuant to Section 362 of the Bankruptcy Code for Defendant's actions affecting property of the debtors' estates.

2.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. No trustee has been appointed for Plaintiff or any other Debtor in the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"), and the Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  On November 22, 2022, the Court entered an order authorizing joint administration of the Chapter 11 Cases [D.I. 128].  Accordingly, Plaintiff has the authority to file this Complaint to commence, and thereafter to prosecute, this Adversary Proceeding.

3.      Prior to the filing of the Chapter 11 Cases, Alameda engaged in cryptocurrency trading, venture investing and other activities.  As part of its trading operations, Alameda opened and operated accounts on various cryptocurrency exchanges around the world.

4.      Upbit is a large cryptocurrency exchange platform reportedly with more than approximately $1 billion in daily trading volume.[2]

5.      Prior to the filing of these Chapter 11 Cases, Alameda maintained an account on Upbit held nominally in the name of Yang Jai Sung using the email address seoyuncharles88@gmail.com (the "Alameda Account").  The Alameda Account was at all relevant times funded and controlled by, and used solely for the benefit of, Alameda.

6.      Immediately after commencing these Chapter 11 Cases, the Debtors determined that Upbit had locked the Alameda Account, rendering the Debtors unable to recover Debtor assets then-valued at approximately $53.4 million.  The Debtors promptly contacted Dunamu to request that it preserve the Debtors' assets in the Alameda Account and cooperate with the Debtors' requests to facilitate the return of these assets for the benefit of the Debtors' estates.

7.      Despite repeated outreach from the Debtors through a wide range of approaches, Dunamu has refused to cooperate with the Debtors' requests and continues wrongfully to withhold the Debtors' property.  This Adversary Proceeding seeks the turnover of these estate assets held by Dunamu.

8.      During the course of this Adversary Proceeding, Plaintiff may learn (through discovery or otherwise) of additional property of the Debtors subject to turnover under Section 542 of the Bankruptcy Code, or of transfers made to Dunamu that are avoidable under Sections 547 or 548 of the Bankruptcy Code.  Plaintiff intends to recover all such property and avoid and recover all such transfers made to or for the benefit of Dunamu or any other transferee of such transfers.  Plaintiff reserves the right to amend this Complaint to include, without

---

[2]      See CoinGecko, *Upbit* (last visited Oct. 22, 2024), https://www.coingecko.com/en/exchanges/upbit.

limitation:  (i) further information regarding any property or transfers, (ii) additional plaintiffs or defendants, (iii) modifications of and/or revision to the defendants' names, and (iv) additional causes of action, if applicable (collectively, the "Amendments"), that may become known at any time during this Adversary Proceeding, through formal discovery or otherwise, and intend for any such Amendments to relate back to this Complaint.

## JURISDICTION AND VENUE

9.     This Adversary Proceeding relates to the Plaintiff's Chapter 11 Case filed with this Court on the Petition Date.  The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

10.     This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter final orders herein.

11.     Venue of this Adversary Proceeding in this District is proper pursuant to 28 U.S.C. § 1409, and venue in this District is consistent with the interests of justice, judicial economy, and fairness.

12.     The statutory predicates for the relief requested herein are Sections 105(a), 362, and 542 of the Bankruptcy Code.

13.     This Adversary Proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure because, at a minimum, it seeks, among other things, to recover money or property belonging to the Debtors' Chapter 11 estates.  Fed. R. Bankr. P. 7001(1).

14.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to the entry of final orders and judgments by the Court on these claims to the extent that it is later determined

that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

15.     Plaintiff Alameda Research Ltd. is a British Virgin Islands company limited by shares.

16.     Upon information and belief, Defendant Dunamu is a company incorporated in the Republic of Korea.  Dunamu currently operates the Upbit exchange.[3]

## FACTUAL ALLEGATIONS

17.     Prior to the Petition Date, Alameda engaged in cryptocurrency trading and other activities.  In connection with its cryptocurrency trading activities, Alameda maintained and operated accounts on various cryptocurrency exchanges around the world.  Alameda sometimes opened accounts on these exchanges in its own name, but other times it sought to obscure the fact that it was operating the accounts on these exchanges by opening accounts in the names of its employees or in the names of shell companies.  These "secret" accounts afforded Alameda the ability to trade without expressly disclosing its involvement—Alameda could execute trades from its accounts without others knowing that it was behind the trade, allowing it to conceal its operations and strategy.

18.     One such "secret" account was opened on Upbit and held nominally in the name of Yang Jai Sung using the email address seoyuncharles88@gmail.com.  On March 27, 2022, an Alameda employee posted in an internal Slack channel that "[w]e're now verified on Upbit." The then-co-CEO of Alameda, Caroline Ellison, replied that she did not yet "see the credentials"

---

[3]     *See, e.g.*, Upbit (last visited Oct. 22, 2024), https://upbit.com/home (providing a link to Dunamu's website in the "About us" section of Upbit's website).

for the Alameda Account, to which another Alameda employee responded that he "got in and will save the credentials." On the same day, the email address associated with the Alameda Account, seoyuncharles88@gmail.com, was set to automatically forward all incoming correspondence to an email address maintained by Alameda.

19.     As described in further detail in *FTX Trading Ltd.* v. *Genesis Block Ltd.*, No. 22-11068-JTD (Bankr. D. Del. Nov. 4, 2024) [D.I. 27532], Yang Jai Sung—who is the nominal owner of the Alameda Account—is the father of Charles Yang, who was Head Trader at Alameda affiliate Genesis Block Ltd. ("Genesis Block").

20.     As of the Petition Date, the Alameda Account held Debtor assets valued at approximately $53.4 million.

21.     Dunamu has without justification refused to turn over the assets in the Account to the Debtors, despite numerous requests. On November 16, 2022, the now-CEO of the Debtors sent a letter to Upbit requesting that the assets in the Alameda Account be secured and seeking to coordinate the transfer of the assets in the Alameda Account to the Debtors. Upbit did not reply to this correspondence.

22.     On November 17, 2022, the Debtors forwarded the letter to two additional email addresses associated with an Upbit affiliate located in Singapore. After the Debtors sent another email emphasizing the time-sensitive nature of the inquiry, an attorney associated with the Upbit affiliate confirmed receipt and, several days later, represented to the Debtors that his client "does not maintain or hold any digital assets or funds associated with or on behalf of the subject person."

23.     On January 6, 2023, Upbit's parent entity, Dunamu, contacted the Debtors to express interest in bidding on certain Debtor assets. On January 12, 2023, the Debtors had a call

with Dunamu in which they explained the circumstances surrounding Alameda's creation and use of the Alameda Account and requested Dunamu's assistance in securing the Debtors' assets. That same day, the Debtors followed up with an email to Dunamu passing along the Debtors' earlier correspondence with Upbit and reiterating the Debtors' request that Dunamu promptly facilitate the return of the Debtors' assets. Dunamu did not respond to this request, or to any of the Debtors' four follow-up emails over the next several months.

24.     Finally, on July 5, 2023, Dunamu responded to the Debtors' fifth follow-up email by stating that Dunamu could not confirm whether the Alameda Account even existed, and that before Dunamu would be willing to engage in any further discussions, the Debtors needed to provide evidence that Alameda had in fact controlled the Alameda Account. The Debtors promptly provided Dunamu with documentation of Alameda's control of the Alameda Account, including correspondence showing that the seoyuncharles88@gmail.com email address associated with the Alameda Account was set to automatically forward incoming mail to Alameda, as well as an example of an Upbit email to that same email address reflecting a particular cryptocurrency transaction, which had in turn been forwarded to Alameda.

25.     Despite having received the requested documentation, and notwithstanding that the Debtors had previously provided Dunamu with details regarding the Alameda Account's registration and asset holdings that would only have been available to the party that created and controlled the Alameda Account, Dunamu refused to cooperate further. On July 18, 2023, Dunamu stated that the materials the Debtors had provided were "not sufficient to progress to the next step" of even discussing the existence of the Alameda Account, and that Dunamu would not engage in further discussions unless the Debtors provided several additional forms of documentation, including things like notarized documentation of the (non-existent) "name

lending contract" or other contractual agreement between Alameda and Yang Jai Sung.  Dunamu also noted that even providing each of these requested items might not be sufficient for Dunamu to agree to discuss further.

26.    On information and belief, Dunamu is well aware that the Alameda Account (and the funds therein) are Debtor property.  In addition to the detailed information and documentation the Debtors already provided Dunamu, testimony during Sam Bankman-Fried's criminal trial confirmed that the email address associated with the Alameda Account was in fact controlled by Alameda.  *See*, *e.g.*, Trial Tr. at 454:19-457:10, *United States* v. *Bankman-Fried*, No. 22-cr-00673 (S.D.N.Y. Oct. 6, 2023), ECF No. 352 (describing how Alameda hid an $8 billion liability in "this seoyuncharles88@gmail.com account" on the FTX exchange).

27.    And as the declaration executed by Caroline Ellison, former CEO of Alameda, attached hereto as Exhibit 1, makes clear, there is no bona fide dispute as to the Debtors' ownership of the Alameda Account.

28.    Notwithstanding all of this, Dunamu has refused to turn over the Debtors' property.  As a result, the Debtors have no choice but to seek judicial enforcement of their rights under the Bankruptcy Code.

29.    Section 542(a) of the Bankruptcy Code mandates that "an entity, other than a custodian, in possession, custody, or control during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  11 U.S.C. § 542(a).

30.    The assets held by Upbit in the Alameda Account are property of the Debtors' estates pursuant to Section 541(a)(1) of the Bankruptcy Code, which defines "property of the

estate" to include, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held."  11 U.S.C. § 541(a).[4]

31.    "Congress intended that property of the estate be broadly inclusive of all interests that the debtor has under state law."  *In re Barksdale*, 281 B.R. 548, 551 (Bankr. D.N.J. 2002). "[T]he Bankruptcy Code is not concerned with the 'technicalities of title' when it comes to determining property of the estate."  *In re NJ Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *8 (Bankr. D.N.J. June 29, 2006) (cleaned up).  Instead, property belongs to the estate where the debtor controls the property or otherwise indicates its "legal or equitable interests" in the property.  *E.g.*, *In re Schwartz*, No. 10-21505, 2014 WL 2621114, at *5 (Bankr. D.N.J. June 12, 2014) (holding that bank account not in debtor's name was nevertheless property of the estate where debtor funded account, showed "ownership, control, and interest" in account, and money "functionally belonged" to debtor).

32.    The assets in the Alameda Account, valued at approximately $53.4 million as of the Petition Date, are not of inconsequential value or benefit to the estate and must be returned to the Debtors.  Moreover, by refusing to return the assets in the Alameda Account to the Debtors, Dunamu is depriving the Debtors of the value of their property and has caused the Debtors to incur significant costs in seeking to secure those assets.  By refusing to process the Debtors' withdrawal requests, Dunamu has flouted one of the key purposes of the automatic stay:  "to prevent any creditor from becoming a self-determined arbiter of what constitutes property of the

---

[4]    In addition, insofar as Dunamu qualifies as a custodian under Bankruptcy Code section 543, it is obligated to "deliver to the [Debtors] any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case."  11 U.S.C. § 543(b).

estate and what actions are permitted or prohibited by the stay." *In re Johnson*, 548 B.R. 770,

787 (Bankr. S.D. Ohio 2016); *see also Maritime Elec. Co., Inc*. v. *United Jersey Bank*, 959 F.2d

1194, 1204 (3d Cir. 1991) ("[T]he stay protects creditors by preventing particular creditors from

acting unilaterally in self-interest . . . to the detriment of other creditors.").

## CAUSES OF ACTION

### COUNT ONE
### TURNOVER CLAIM PURSUANT TO 11 U.S.C. § 542

33.      Plaintiff repeats and realleges the allegations in paragraphs 1 through 32 as if

fully set forth here.

34.      As alleged above, Dunamu continues to withhold the assets contained in the

Alameda Account, which are assets of the Debtors' estates that are not of inconsequential value.

The Debtors seek an order from the Court directing Dunamu to turn over to the Debtors the

assets in the Alameda Account, which are property of the Debtors' estates pursuant to

Bankruptcy Code Section 541(a)(1).

35.      The relief requested also is authorized under the Court's equitable powers

codified in section 105(a) of the Bankruptcy Code.  Pursuant to that section, this Court "may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions"

of the Bankruptcy Code.  11 U.S.C. § 105(a).

### COUNT TWO
### VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(a)(3), (k)

36.      Plaintiff repeats and realleges the allegations in paragraphs 1 through 32 as if

fully set forth here.

37.      Section 362(a)(3) of the Bankruptcy Code provides, in relevant part, that a

petition "filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all

entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

38.     The Debtors' assets in the Alameda Account comprise property of the Debtors' estates under Section 541 of the Bankruptcy Code.  *See* 11 U.S.C. § 541(a)(1) (estate property is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case").

39.     Section 362(k) of the Bankruptcy Code permits an individual injured by a willful violation of the automatic stay to recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  *See* 11 U.S.C. § 362(k)(1).

40.     Plaintiff respectfully submits that the above circumstances warrant both actual and punitive damages to be determined by the Court based on the depletion of estate assets, including any losses in value of the Debtors' assets in the Alameda Account.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

41.     Enter an order under 11 U.S.C. §§ 542 and 105(a) directing the turnover of all assets held in the Alameda Account to Alameda;

42.     Enter an order under 11 U.S.C. § 362(k) awarding actual and punitive damages to Plaintiff for Defendant's violation of the automatic stay with respect to the assets in the Alameda Account;

43.     Award Plaintiff its attorneys' fees, pre- and post-judgment interests, and costs of suit; and

44.     Award Plaintiff all other relief, at law or equity, to which it may be entitled.

Dated:  November 5, 2024
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail:landis@lrclaw.com
      cobb@lrclaw.com
      mcguire@lrclaw.com
      robertson@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: wheelers@sullcrom.com
      gluecksteinb@sullcrom.com
      decampj@sullcrom.com
      dunnec@sullcrom.com
      crokej@sullcrom.com

*Counsel for the Debtors*
*and Debtors-in-Possession*